Good afternoon, ladies and gentlemen. This is the time for the hearing. I think in the case of United States v. Curtin, Anderson Falls Council are here and present and ready to proceed. The court is here. Judge Pregerson is with us by video from Pasadena. Council for the appellant may proceed. May it please the court, Cal Potter on behalf of Kevin Curtin, knowing that the court is familiar with the facts of this matter, I'd like to address why the majority's reversal of this case was the correct decision. The premise that the mere possession of fiction is not relevant for Senate 401. In this particular instance, the fiction was not a part of the transaction that led to the charges. Doesn't it shed some light on what his intent was? I don't believe that it does. And what's important in looking at it, there's not even showing that, in fact, he read this. There was testimony about that he had not read it. That's true, but he had it on his person at the crime scene. Doesn't that tell us something about what's going on in his mind? He was going there to meet an adult, that it was a daddy-daughter kind of issue, and he was going there, and he puts that out as that's what his defense is. And, in fact, if that's, in fact, correct, it's believed by the jury, that's a complete defense to the crime. Why should he be allowed to put that defense out and say that that's what his intent was, and not be subject to impeachment of some sort on the intent that there are all these other stories that just involve children? Because it wasn't offered for the purposes of impeachment. What was offered was the objective-type test initially. The government also had in their possession the other e-mails showing other people who had been prosecuted. That's the type of intrusive-type evidence that should be allowed. Was that information introduced as well? Yes, it was. This came in as substantive evidence. Is that correct? That's correct. There was no effort then, because it was substantive evidence, they never really had to reach the point of whether it would be admissible as impeachment. It was not offered. It was offered on direct. And more importantly, the type of evidence that was being offered concerning these, of course, were very prejudicial in the sense that they were dealing with the crime of incest and taboo in nature. Now, the jury in the panel, I think, in some sense, think that you've weighed the prejudice, the separate, the 403 issue. Do you agree with that? No, we don't. And, in fact, throughout the opening brief of pages 21, there's, at line 8, as there was merely possessed propensity evidence, was far more prejudicial and probative. Well, you didn't identify 403 as an issue on appeal, did you? We did. And it did not specifically have the word 403, but without the brief, it was then cited to the cases, and, of course, the case that the government relies upon, Allen, where you have a particular element dealing with racial animus, where you have to show in the hate crimes, that was a 403-type case. It's forever been a rule in this circuit that impeachment evidence is admissible on direct, so why wasn't this useful as impeachment evidence in view of the fact that briefs were filed long before the trial, saying that's what the defense was going to be? The issue became one that we filed a motion in limine. We filed a motion in limine trying to preclude this type of evidence, and then that's when it came forward that just before trial, it was about a stack of these stories that came up dealing with these particular facts. The point is, it's admissible for two purposes, both to show the intent and in anticipation of what the defense is going to be. Well, one of the important things, though, in terms of looking at it is whether it is prejudicial or whether it's probative or whether it's more prejudicial than probative, and that's what the Court was concerned about. And the reasons of use of discretion on the part of the trial court is he didn't bother to even read all of these, the five of the 140 that were coming in. Whether he was overwhelmed or whether he simply didn't read it, the record reflects that he did not read all five of those stories. But, in fact, only those five stories came in in Hank-Burba, is that right? I'm sorry. Because in your applied brief, you suggest otherwise. But my understanding is there were only five stories that were actually admitted and the rest of it was just admitted that there were another 140 stories. That's correct. There were five stories that were admitted. The arguments and the references were to approximately 140 other stories of the like-type nature. The concern, though, is that, in fact, as pointed out by the opinion by Judge Wallace, is the fact that what is lost sight when we rely upon Sheminowitz, what is important is the fact that it is a protected-type speech in terms of what we have known as the First Amendment-type protections dealing with fiction. And the distinctions that were made as to the other types of cases, whether it was Allen or the other type of cases which brought in other types of literature, dealt with the type of nonfiction. They were dealing with Nazi memorabilia, Nazi statements, hate statements, statements dealing with aspects of how you would go about to commit these crimes. Counsel, would it make a difference to your argument if these had been nonfiction accounts of similar conduct? For example, newspaper clippings in his possession or true crime or something like that? Part of our argument is that it would be different if it was a situation where it was nonfiction. And that's what the opinion points out, that these were fiction. How would that be different in terms of his opinion? What would be, I mean, you'd still have your argument, well, he might not have read it, he can read whatever he wants. What would be analytically different in your view? What's important is whether these would point out that he is actually trying to either copycat the crime or the crime was involved, that he read it to the individual who was the decoy, or somehow that he had implicated what was being printed or the non-literature, if it was a nonfiction type situation, that he was trying to implicate or bring that into play in the crime that he was charged with. What if it were advocacy literature, let's say he were a member of NAMBLA, and I realize NAMBLA deals with boys rather than girls, but let's say, you know what NAMBLA is, the Man Boy Love Association, something like that, but let's say there were a group like that dealing with advocating love or sexual relations between adult men and young girls, and let's say he had that kind of literature on him, would that be, that's a step removed, what as Graeber suggested. Well, and I think this is not merely factual, but actually advocacy, that this be made legal,  and I think that's the concern of this Court in Sheminovitz, that there was a situation where the fact that the status. I asked you a question. I don't know if you heard there was a question there. Would that be admissible, in your view? I don't believe that it would be, because of the. How do you deal with Allen? How do you then distinguish Allen? That then is Allen, isn't it? No, Allen, because it's an element of the crime, and in Allen, what is important is they have to prove this racial element on the intent, they have to prove the racial animus, and so what I believe Allen stands for is the proposition that you can bring in other materials, whether they be non-literature, and it appears that it was non-literature in Allen, as well as pictures of the defendants themselves engaged in these types of hate crime situations. So there is a difference on Allen, and I would submit that what you're talking about is very much a concern about an individual who was a homosexual or an allegation that he was homosexual being brought forward, which clearly was inflammatory. But this case, in this case, since you have stories which are fantasies, and since this person admitted that he had a fantasy about having sex with young girls, but that he wasn't doing it, does that make a difference, the fact that these are, in fact, fiction and, in that sense, fantasies? I believe that the fact that they are fiction is important, and as the opinion pointed out, it's a situation where this individual has not been shown not only not to be reading this, but it's a situation where there's no showing that he's trying to implicate the decoy in it, there's no showing that he tried to implicate his crime going across state lines, or whether he talked in the chat room about the role playing, none of that was brought forward in terms of the conversations that were intercepted, and they were repeatedly intercepted, not only on the computer, but they were taken out. Counsel, this is Judge Preggerson. Just, you know, to me, this seems like a very simple case. You have a trial judge here. He applied Rule 401, did he not? And 404B, did he not? He did that, didn't he? Yes. And then he applied 403, and the standard of review is abuse of discretion. And where was the abuse of discretion here? I don't know that you can start looking at cases like Saminovich and these other cases and kind of reason from those that when the trial judge has got to make that overall decision of whether probative value outweighs prejudicial effect, that all that other stuff is that helpful. The judge is there, it's a dynamic situation, he knows what the evidence is, he struggles with it, and he follows the rules, 401, 404B, and 403, and he makes his ruling. And I just don't see any abuse of discretion there. And it's rare, to my knowledge, that a district judge who exercises his discretion in evidentiary matter is reversed by a court of appeals. I mean, that's his primary job, is to make these calls. Your Honor, the important thing here is the fact that it was shown by his own admission in the record that he didn't read all of these stories. And so it's a situation where you have... But, you know, there's 140 of them, and they're probably... He did read some of them, didn't he? He read one and said that it was inflammatory in nature and he didn't get through with it. And I think that's where it's important to look at what the actions... So you're saying that the district judge abused his discretion because he didn't read those 140 stories that were on this guy's little personal pocket computer? Yes. Is that your argument? And part of the argument also, Your Honor, is the fact that the record reflects, in terms of the analysis on the 403, that he came forward and he said he had second thoughts. The sheer numbers were overwhelming. He had problems with them all. I mean, those are the comments that he was making about... Yeah, he had problems. He had problems, but he made a decision. And it was not an easy decision for him to make. But that's his job, is to make that decision, because you've got to make those decisions in the context of a trial, in the dynamics of a trial. And the concern down the road, in terms of what happens with this particular case, is if, in fact, you have a situation where it's a robbery, then you would be able to bring in, if an individual had Dog Day Afternoon, or if it was a situation where it was a rape, then High Plains Drifter would come in. Now, let me ask you about that. They may have the Terrorist's Handbook, and they're accused of palm-making. They may have... Back in the 50s, people used to keep left-wing books turned with the spine in, so that visitors to the house wouldn't see the title. But I would imagine that if they ever got searched, those might be used to show some sort of subversive intent. Is there a body of case law about these non-sexual things? Or do we just have Allen and Szymanowicz to deal with? Well, I believe Allen and the Tenth Circuit cases that were cited. I didn't find Allen very important, actually, because they didn't just have stories. It was pictures of their own tattoos, showing that they get themselves tattooed with a swastika. Kind of makes you think they're Nazis. It wasn't just stories about Nazis. And you have the other hate crime cases out of the Tenth Circuit that also deal with those issues. And I think those are the important distinctions. If, in fact, you have to prove as an element of the crime that, in fact, an individual has racial animus, then it's important to look at these types of things. And once again, those are non-fiction situations. On this one, what the government wanted to prove was that the defendant had a yen for underage girls. And as far as I can tell, tell me if I'm right, what these stories are about is incest. Yes, sir. Is that correct? Yes, sir. And the concern is, because of the highly inflammatory nature, that that's what the jury was concerned about. Did the district judge ever focus on either the incest, and also, weren't some of them about very, very young girls? Yes, ma'am. Did the district judge ever focus discreetly, in terms of the question that Justice Fragerson was asking you, on the fact that there were elements of these stories that were incendiary in a way different from simply the interest in underage girls? Yes. There was a — it did kind of go back and forth. There was a period where there were being stories that were underlying. The words were going to be used to show if there was a similarity with the issues that came out of those e-mails, the e-mails or the chats. And what I'm asking is this. These stories were specifically about — all of them were about incest, as I understand it. And some of them were about very young girls. Yes, ma'am. In making the probative prejudice balanced, did the district judge ever discuss separately the fact that they were about something in addition to an interest in underage girls? No, I don't believe that he did. And the analysis isn't that clear on the 403, because he allowed the things — he was concerned about the fact that there would be prejudice. And then what he said, I believe, was that after sleeping on it overnight, he was concerned about it. And they went through the different processes, whether there was going to be underlying — limited the number of stories or whether — And during that, the accounts for the fact that there was — there were elements of these stories that went beyond the intent necessary for this offense and the intent that this guy had shown. Did they — was that considered along the way in terms of — It was discussed. — the degree of prejudice? There's no actual decision other than he did issue the instruction, the cautionary instruction, about why they were being admitted and whether they should be dealt with or how the jury was to utilize them. And they were instructed — the cautionary instruction was given at that time as well as in the final instruction. Or put another way, would your argument be the same if these stories were only about sex with underage girls and didn't have this incest element to it? I think what's so difficult is the incest is so taboo. And the stories are very, very difficult for mainstream people to read and to deal with from a literary standpoint. And the sense is that he's a bad person. But you're not asking me a question. What turns on the — does this case turn on the fact that these stories had this incest element? And if they didn't have it but just had sex with underage girls but not in an incest category situation, would you be more prone to agree that either that it was missed at Balder 404-B or added the prejudice balance went the other way? No, because it's dealing with the crime that's charged. You're charged with going across state lines to have sex with a minor. What was your client's defense? He was — that he was role-playing, Your Honor, that he was engaged — Role-playing what? Role-playing as an individual involved in this — as he explained to the police in the statement, that he was involved in a daddy-daughter type situation. He's the one that introduced daddy-daughter into the case? He did, Your Honor. But is it the — He did it as a part of the statement. The role-playing certainly was a defense. And the actual plan was not to have daddy-daughter sex. It wasn't his daughter. Exactly. And that's the whole issue. It could never be that situation unless he were calling his, you know, nephew or niece or something of that nature. Well, as a Nevada, maybe he had a quick adoption. I'm sorry? Maybe he was going to do a quick adoption. It's Nevada, after all. Right. Counsel Black, I wonder if the admission of the evidence mattered. The defense seems so outlandish to me that my thought, frankly, on reading the record was, so you keep the stories out, so what? The guy would get convicted anyway. Well — They had his e-mails. They had his e-mails, but he passed the basis — His e-mails are really pretty impressive at showing that his intention was to travel across state lines to have sex with a 14-year-old. And then he spots the woman, and she's obviously twice the age of the person he's looking for. So after taking a couple good looks at her, he leaves. What do they need the story for? It seemed like building a lily. And why wouldn't it be harmless error to let him in? Because of the fact, I mean, as the Court said, they didn't waive it. But more importantly, they also — I mean, that's one perspective about what happened with the decoy. Our argument, of course, was that she — Did the government claim harmless error? I'm sorry? Did the government claim harmless error? No. Why isn't that the complete answer to the Justice Klanfel's question? I mean, you can say more if you want, but the fact that the government has not argued harmless error. I'll reserve my remaining time, Your Honor. Are there any further questions, Justice Klanfel? Yes, I actually have one. As you know, Mr. Potter, I felt that we were bound by Shimonovitz's alternative holding that possession of material of this sort is not relevant on conduct, nor is it a prior bad act. However, since we're now sitting in Bank, that alternative holding is on the table. Is there a reason, in your view, why we should not recede from that alternative holding, such as to eliminate its categorical prohibition against the use of material of this sort as bearing on conduct or as being a similar act, and instead leave it to the district court's discretion to make a case-by-case call after having made, which I don't think was done here, a very careful 403 balancing? Well, that's certainly an alternative, because I don't believe that it really was a 403 balancing done by the court. No, but that's not my real question. My real question is, why shouldn't we recede from Shimonovitz's categorical holding? Well, I think the danger is that Shimonovitz is good law, and it deals with the fact that you try the case on the ax, and not based upon the literature that an individual  can find. But the point is that Shimonovitz made a categorical ruling. What is wrong with saying, fine, in many cases it may be the case that it isn't relevant, it doesn't shed any light on conduct, but in some cases it might? I think that's what the Court has already held in Allen. If it's relevant to the elements. Well, then you see no objection to our conforming Shimonovitz to a modified position. Well, I think Shimonovitz is different because they were trying to make those arguments in Shimonovitz that it was dealing with intent, and the Court said, no, it wasn't the intent that was in question here. Whereas in Allen, in that line of case, it's the word that's involved. But, yes, but if you recede from the categorical analysis, then your intent, in this case, is clearly distinguishable from Shimonovitz, that's because intent is at issue here and wasn't there. Well, it wasn't an issue other than the fact that there was an argument about the subject. That's the same arguments that were initially made in Shimonovitz, that there had to be a showing as to intent as to the touching, that they weren't accidental. And the Court said you had to look at the objective test to make that determination. And I would submit that that's the same situation that you have here. Well, doesn't it really collapse into how you interpret 404B, the intent the government needed to prove here in order to use the word has to be a prior, has to be similar. Is that correct? Yes, ma'am. So the similarity, in your view, what is the similarity that the government had to prove? Well, the similarity was that they were used either in a jet-type situation or it was role-playing or it was used with the decoy. I mean, those are the arguments that were made. You would have to have some type of utilization of these stories in the crime that's charged or similar to the type of crime that's charged. I mean, the crime that's charged is intent to cross these lines and to link up with the minor, correct? Yes, ma'am. So isn't that the baseline intent that you benchmark the stories against as opposed to the defense? Yes. And that's – I think that's part of the argument. And then it came back that it was called subjective intent based upon the fact that he said that he's role-playing, and that opens the door. But clearly, it's not. Right. So my question is, is if you take these stories, either 5 or 105, about incest and children, is there anything in those stories – the fact that you have a bunch of them in your safe or in your bookshelf or on your computer – is there anything in there that shows he had an intent to cross state lines to link up with the minor? No. No, there isn't. And that's the argument, the dissimilarity. Can I ask one more question? At points in your brief, you seem to be saying that 404B is just totally irrelevant here because this isn't an act. And I'm sort of mystified by why we're in the 404B world at all here. Allen, for example, just doesn't say, worry about 404B. It just deals with a precious appropriate value problem. Is your position that 404B doesn't apply here, or what? No, I – we believe that 404B does. I think the well-settled law deals with the fact that the literature or the fact that he possesses these can be, in other cases, has been of the 404B. What case? What case in our court? Well, I think the whole line of cases dealing with Allen in those cases deal with not only literature, but they deal with more than literature. But Allen doesn't mention 404B. And I'm wondering whether we're just outside the 404B world altogether. We're simply in a general relevance, you know, 401, 403 world, and 404B has nothing to do with it. I thought that's what you were saying in your brief, anyway, because you did keep talking about how there wasn't really an act. Well, we had argued that there isn't an act, and that it should have a different balancing, but the decisions were made under 404B by the court. Oh, I've saved my time, then. Can you please, the Court, Nancy Cope for the United States. Opposing counsel in his opening statement told the jury that they needed to look inside the defendant's mind to determine if he had the intent to commit these two crimes with which he was charged. These stories shed light as to what was in his mind, the fact that he did, in fact, have the intent to engage in sexual assault. Oh, how? I mean, you know, I hear that, but the guy's got a bunch of stuff on his bookshelf that is, you know, may not be a la norm, but how does that show he had the intent to link up and have sex or to do something across state lines with a minor? That's where I'm left scratching my head. Right. Well, first of all, he was charged with two crimes. There was the travel with intent to engage in sex with a minor. He was also charged with coercion and enticement, using a computer to entice a child or to attempt to entice a child to engage in prohibited sexual conduct. The content of these stories, he utilized them. He incorporated them into his chats and into his acts. And in specific, he, the stories, many of the stories talked about little girls when they get their periods, whether they can get pregnant. In his chat on page 37 of the supplemental excerpts of record, he said to the girl, may I ask you a personal question, do you have periods yet? One of the stories that we entered into evidence also talked about, and that was Love for the World, also talked about how an adult should wait to have sex with a child. You think if he didn't read the story, he wouldn't have known about periods? I mean, I don't understand what you're saying. No, I'm not claiming that. I'm stating that. I mean, just because you can find words in the stories, in the 140 stories that match something in the emails. I mean, it would be very surprising if you didn't. Well, I'm stating that that, along with other evidence that were in the chats and that were also in the stories. Is it right that it is, and I should remind you, it says, talks about Oedipus Rex. All of those of us who've read Oedipus Rex, you think we think about killing our father and sleeping with our mother? Is that what you think you can infer from that? Absolutely not. You sure? Yes. What if we show up in a room with a knife in our belt? Well, showing up. What I want to know is what explains the government's injudicious attempt to introduce all 140 stories? As you can tell, I read every word of this trial a couple of times, and that turned this thing into a train wreck. Why does the government try to put in 140 stories where most of them aren't relevant, instead of just the five that ended up going in? Well, Your Honor, initially, we were talking about entering 21 of them in. The judge had narrowed it down. The judge had said. Your second position, but your first position was 140. Well, our first position was that there are 140 stories. Your first position was to get them all in, and that turned this trial into a mess. Why get any of them in? You guys convict all the time. I see case after case after case. Now, maybe from other districts, maybe you don't feel so confident,  talks to some male agent, usually, who pretends to be a young girl, and they catch him, and they arrest him, and they convict him. And I have yet to see a case not involving some agent, involving a real victim. But the government managed to convict every time. Why do you need this stuff? Why cloud a perfectly fine prosecution that would almost certainly have resulted in a conviction by adding this evidence? Well, in this case, we believe that the stories were needed because intent is a material element of each crime with which the defendant was charged. I have two problems with this theory, and let me lay them out so you can explain why I'm mistaken. One is there's a difference between fantasy and intent. My guess is that a lot of people have sexual fantasies that they themselves disapprove of and would never do. The second concern that I have is it's a different fantasy. The fantasy that you need to prove is sex with an underage girl, and the fantasy that you need to prove is the underage girl. So I'm wondering, do you see that the stories tend to prove, if this is if you assume that fantasy and intent are the same thing, are incest, different kind of misconduct? And I'm wondering, do the stories have much of a tendency to prove anything except that the defendant is a really disgusting guy and the jury ought to lock him up, whether he did this or not? Well, I'll address each of your questions in order, Your Honor. First, you talked about fantasy as opposed to reality. No, I didn't say fantasy as opposed to reality. I said fantasy as distinguished from intent. People may fantasize, oh, if somebody really does you wrong in your office, you may fantasize running him over with your car, rear-ending your car into his Mercedes, but you're not going to do it. Fantasy and intention are two different things. Walter Mitty has fantasies. He doesn't plan to do any of them. And the second question is, why is an incest fantasy the same as a sex with young girls fantasy? Okay. I'll start with that. If you look at page 14 of the original, the appellant's excerpt of records, the defendant's voluntary statement, when questioned, before we knew anything about these stories about that were on his PDA, the defendant said, and then you role-play as dad and daughter or whatever you wanted to be. But he's admitting to a fantasy again. He's not admitting to a plan. He is admitting to not having that plan, but to having the fantasy. Well, he's admitting to coming to the scene to engage in daddy-daughter sex. No, he is not. He is admitting to coming to the scene to make believe he was engaging in it. He can't have daddy-daughter sex with this woman unless he adopts her, which takes a long time. I mean, it's an impossibility. It's true. It doesn't take a while. Isn't this distinguished, really, just these last questions, by the situation we had in this prior Internet acts, they're similar to the one now charged. The question is, does it come in? The answer is, yes, it does, because it is similar in character, nature, MO, et cetera. Well, these acts were similar. Well, see, that then – I mean, those really were similar. And here now you're trying to say is that this literature is similar to the crime you're charging. Well, this literature, the content in the literature is similar. Apart from the incest, there was also significant talk about the children being children. All right. But the answer to that is – let me get to the next stage, which is do you continue to – is it your position that the prejudice, probative value issue is not in this case, in the appeal at this point? It's my position that it is not. However, I can address it as well. Right. Let's assume it is. Okay. It is mentioned in the opening brief. It certainly was decided below. It is certainly discussed at some length in the reply brief. It seems inherent in the whole situation anyway. Let's assume it is. Okay. All right. So now, given the fact that these stories have, as has been pointed out, several elements that were not involved in this crime, why isn't that enough to make an abusive discretion to ignore those differences, which is what happened here? Well, these stories, first of all, there were shockingly graphic statements in the chat. So these stories, as far as prejudice go, there wasn't – But they weren't about incest, and they weren't about 9-year-olds. No, but his statement was about incest. It was about fantasy about incest. Well, that's correct. But he wanted to – he clearly stated that he wanted to engage in sex with a young girl – well, he stated that it wasn't a young girl, but that he wanted to engage in sex that he could pretend was daddy-daughter sex. Those were his words. He is the one who brought incest in. The reason that these two – Do you have any daddy-daughter sex statements in his e-mails? We don't have daddy-daughter, but he does talk about pretending that she's his niece in the e-mails. Is there anything other than that referenced? No. No. Okay. So there's no – there's no real incest references in the e-mail. There's sex references. If you don't count the niece references. And there's references that – to her not being a mature woman. I mean, they talk about the parents and some other things. There are references about that. But then what do those have to do with the literature, fictional literature? Because the acts in the literature, he incorporated – this is not a case of mere possession. This is a case of content as well. He incorporated and he adopted the content into his acts and into his chats. And more importantly, the trial judge exercised discretion. We went through several hearings. We summarized the evidence. He read – he read one story. He read the – part of the second story. And then he read all of the highlighted portions. Now, at the time that he read the highlighted portions, that's what he thought was going to the jury. He thought that the stories with highlighted portions and the – and he talked about having an agent testify, well, these highlighted portions are what's relevant. And that's when he read that. But that isn't what happened. The whole story is what happened. That's right. Because that was the defense's request. The defense's request was, if the stories are going in, I don't want the highlighted – I don't want anything highlighted. I want the whole stories going in. Counsel, I'd like to return to a question that was asked of opposing counsel earlier, and that is why any of this has to do with 404B in the first place. To go back to one of the earlier examples, if there were – well, let's say there were a possession of precursors to manufacturing meth, and someone had bought 14 cases of Sudafed. And the question was, what were they intending to do with it? And they had in their possession a novel called, you know, Memoirs of a Meth Addict. And it explained what to do with your cases of Sudafed. Is that a 404B problem, whether that's admissible or inadmissible? Why isn't it just a straight relevance and prejudice, 401, 403 issue? But, Your Honor, the cases that I have read, every case that I have read dealing with issues such as this sort, including cases such as the one that you've just discussed, talk about it in a 404B analysis. No, Alan doesn't. Alan does not mention 404B. Well, Alan talks about how the – Alan refers to Shimanovitz, which is a 404B case. And Alan talks about how the evidence, because it is a specific intent crime, because intent is a material element of the crime, that it comes in. Yes. Now, so we're writing on a clean slate. Shimanovitz had a 401 discussion as well. So we don't know whether they cited the 401 portion or the 404B portion. Excuse me, Judge Graber. So when they cite Shimanovitz, they could very well be citing the 401 part of the opinion. You know, the problem I've had with your approach on this case, and I'm a little disappointed in your petition that you're still talking intent, when it was clear from the panel decision that we felt that we had to file off Shimanovitz, and Shimanovitz had alternative findings, alternative holdings, which struck me as very important. And I think it would help us a lot in deciding the case if you can tell us the government's position on the alternative holdings, rather than just the intent, which was thoroughly explained by the dissent in the panel decision. When the Court says there are even more fundamental reasons why stroke magazines and articles were inadmissible, that's alternative language holding, and that's after the dissent discussion. And then the Court goes in, as Judge Kuczynski indicated, on its 401 analysis and indicates that they're not relevant at all, and then points out. It tended to show that he looks at and he reads, but that he didn't actually do. So there was a holding by the Court under very similar facts that there's an irrelevancy, and then goes on in another holding that you can't use it for 404B because it's not a bad act. And the materials are very similar to that. And then not only that, goes on to make a third alternative holding that even if it were otherwise, it would be improper under 403 because it's simply too prejudicial. And of course, that is important because in this case, even the district judge had a tough time getting through a story and a half. And I've read all the stories that you admitted, and I can understand why he didn't. It's another question whether he should have kept them out without fully reading them. That's another point. But I think I'd be very helped if you could take all three of these alternative holdings and indicate how the government gets by those. Because if any one of the alternative holdings holds up, then I think that the government has to lose. Well, Your Honor, first of all, 404B does not require bad acts. 404B requires acts. This was another act. It does not have to be a bad act. Secondly, Your Honor claims that the Your Honor has stated that It has to be a character. It has to be evidence going to character. So when Shimanobis talks about bad act, he's saying not every act in the world falls under 404B. It has to go through the 404B filter, obviously. What it deals with is acts that bear on character. So the question is, why is this an act that bears on character that applies 404, that brings in 404 at all? Well, this is Is reading literature an act that bears on character? Your Honor, this is not an act that bears We did not admit it for character. We did not admit it for propensity. Well, if it's not, then you're not in 404B land at all. Then you're on 401 land. Well, my understanding of 404B is that it's not admitted for character or propensity, but it is admitted to show certain other things, including intent. As far as 401 goes, this evidence was clearly relevant. And when we talk about reading the stories, the act was not just reading the stories. The act was possessing the stories. The act was incorporating the content. Also, if I may just go very Well, I was just going to address that point, Your Honor. And the content. Human plumbing hasn't changed for a long time. It's hard to avoid some of the content. Well, we've ignored a little bit here the other parts of 404B. We keep talking about the intent, but before you get there, you have to have enough evidence that he committed the act. So what, in your view, would be the commission of the act? Well, if I can just get to a moment to Judge Berzon's question about how we knew that he read it or how we had evidence that he read it. The judge asked us, the trial judge asked us that question as well. So we had to show, and we did show by tracing through computers, that he had to go on the Internet and search out these stories. After he did that, he had to download them first to his laptop computer because they were in what's known as a zipped format, basically a compressed format. After he did that, he then had to unzip them or decompress them, and then he had to transfer them to his PDA. The PDA does not have the capability to unzip them. The defendant then, when he got on the stand later, admitted to having read some of them. However, considering the fact that he had to take all of these separate steps and consider That doesn't really show anything, does it? Because that happens all the time. You download documents, court documents. You unzip them. You put it in a file. You transfer them to a PDA before you even look at them. And that's not a problem. That's what everybody does when you use a computer. Don't they give you computers when you use the trial judge? I do use computers, and I do have a PDA, and that's not Well, let's say we go with you. And we say the presence of the stories on his PDA supports an inference that this is a man who fantasizes about incest, daddy-daughter incest particularly. Why does that show an intention to engage in daddy-daughter? I don't think you understood the distinction I was trying to draw. I'm thinking a lot of people watch adventure movies like Rambo, and they fantasize about being Rambo, but they have no intention whatsoever of doing anything that's in the movie. Well, when you look at the totality of the circumstances, and when you look at his acts that he committed in combination with these stories, they show that he had the intention. Well, intention, that's what I don't understand. He has a fantasy about one thing that's disgusting, and you're saying that shows he has an intention to do another thing that's disgusting and is not the same thing as his fantasy. Well, but the bare elements are the same. The bare elements of engaging in sexual acts with a child are the same. Okay. Let's stop right there, and I'll go back to my question, which you didn't answer, and that is the first part of 404b says the jury has to have enough support that the defendant committed the act. Is the act you're saying is that he engaged in sex with a kid? No. The act is the possession of the stories in combination with the use of content. No. Okay. So the act that he committed is possession of the stories. That's correct. That's the only act. He possessed stories. Well, that was one of the acts. What was his other act? The other act was incorporating the stories in, incorporating parts of the stories, incorporating conduct in the stories into his conduct, into his chat. Well, but that's different. See, you're now mixing this, what is sort of prior act evidence, however it might be used, with the crime, and 404b is quite distinct. First you have to know what is the prior act, and then you figure out, if you're using that to prove intent, is it similar to the one down the road? So what I'm trying to segregate and have you explain so I can unravel this is, let's define what was the commission of the prior act. And you've now said the commission of the prior act is basically possession of these stories. Is it anything else? Well, finding them. Prior act. Finding them, downloading them, and possessing them. Okay. So we just assume at least what you're talking about is that he had them. Did you integrate at all into that, taking the stories with him across the state lines, or are you just leaving that out? Well, I think that that's obviously part of it. Well, but you're not saying that. I apologize. I mean, I've read Judge Trott's dissent, and he makes a lot of arguments you're not making. And so I'm just wondering if you're abandoning them or what. No, I'm absolutely not. I'm trying to get everything in in the time that I have. And if I did abandon that, I apologize. It was not my intent. He did take them across state lines. He did take them to the place where he was going to meet the girl. And is it important to our understanding of this evidentiary question to understand the crime? And is this crime such that suppose he had turned around at the airport. Would he have committed the crime? He would have committed. Let me ask you which airport. If he had crossed interstate lines intending to have sex with a minor, decided against it and left before he ever, just at the airport. Well, under the case law, he certainly would have committed coercion and enticement, because there is, in fact, case law saying that if they engage in a trap such as this and they do not ever travel, they've still committed coercion and enticement. If he crossed state lines under a strict reading of the statute, yes, he did cross state lines with that intent. By turning around before he did anything, I'm not sure we would have. That's for the purpose of. That's the intent, actually. The statute doesn't say intent if it's for the purpose of. It's a little different, because that suggests some actual plan. Right. Well, it has to be one of his purposes. And if he did that under a strict reading of the statute, yes, he would have violated the statute. What do you mean by under a strict reading? I mean, under the statute as you construct. Yes, he would have. Would we know about it and be able to charge it? Not necessarily. But, yes, he would have violated it. He probably had the same exact same chat, but he just changed his mind, you know, before at the airport. Under the statute, yes, he would have violated it, because he traveled across state lines with that purpose. But what's really important in this case is that the trial judge exercised his discretion and that he properly exercised his discretion. Well, that's the question we have to decide, isn't it? He read the highlighted portions. He received summaries. It doesn't even have to do with daddy-daughter. I mean, Judge Wallace and I are probably the only or in Judge Pratt are probably the only three people who have actually read these stories who are sitting here. And some of them don't even have anything to do with daddy-daughter. It's just disgusting stuff. There are mothers involved. There are grandmothers involved. I mean, it could not be more prejudicial if it's not probative. That's right. That's right. And it's totally dissimilar, even from the fantasy that you're hypothesizing he had. Well, but there are similar acts within these stories, and he incorporated those. So what does similar mean? The defendant is charged with violating the Marine Mammal Protection Act, and they find in his house, after the search, they find a copy of Moby Dick. Does it come in? That's all he's doing, Moby Dick, is kill whales. You know, all day, you know, the guy thinks about his fantasies about whales. He goes out there, throws harpoons at them. That's his whole life. The evidence that comes in? Your Honor, I doubt in that case that it would. Well, tell me, explain to me why. The district judge looks at it and says, yeah, you know, it looks very much like what the defendant's charge was doing here. He has this, you know, he goes and he threw a harpoon at a whale. And there's Moby Dick. What is it? Is it some sort of exception for class? And what if his charge was poison, and he has Hamlet in his library? Does that come in? But, Your Honor, it would depend on. Well, let's say his charge was taking a pound of flesh. Does the Merchant of Venice come in? It would depend on the content of the stories and whether or not he incorporated. I've told you the content. You've read the Merchant of Venice, have you not? A long time ago. A very long time ago. Well, let's take a look. He takes the literature to the crime scene with him. He carries it around with him wherever he goes. I do think – I don't think it's dispositive, but I do think it's very compelling, and I do think that it matters, yes. So the person – On his bookcase, it's another thing. He has it in his pants pocket when he thrives from California to Nevada. That's correct. And he also had nothing about adults engaging in sex. In Shimanowitz, which we've talked about, that defendant also had a playboy. That defendant also had another adult magazine. And those magazines were not introduced. And this is an entirely different case. But remember what his actual defense was. I mean, his defense here would be completely consistent with these stories, right? Because his defense is that he was fantasizing about having sex with a child. The stories. So how did the stories prove his defense? Because his defense was that he wanted to role-play with an adult and pretend that he was having sex with a child. And the stories are pretentious – are pretentious about having sex with a child. So how is it – how does it indicate his defense? Well, the stories aren't really about pretending. The stories are about having sex. But they are pretending. They're stories. Well, they're stories, but they're stories that show his intent when he committed this crime. Ms. Koob? Yes, Your Honor. This is Judge Prager. I just want to ask you this question. If the defendant hadn't come up with this defense that he had, would you have sought to bring in all these stories and evidence? Or did you bring them in because he was coming up with this other story? Your Honor. There had to be some reason for it because it seemed to me with the information that you had off of the computer and the e-mail and all the rest of it, that it was all there. And so I often wondered, why is it that you had to come up with these 140 stories? Was that to offset what you thought would be his defense? To meet it? It was to offset what we knew to be his defense. What? I'm sorry. I couldn't hear what you just said. I'm sorry. In this case, it was to offset what we knew to be his defense. Because that's what he told the arresting officer. Partially. I've read all of the – I've read all of the – and perhaps you can show them someplace else in the record. But every time I see your reference, it's on 404B, and you're talking about your case-in-chief in the tent. I don't see any reference of affirmative impeachment, and I don't see any reference to any other rule. Well, when I say it's because of what we knew, it wasn't because of that. It was for two purposes. We knew that material element of each crime was intent. We also knew that his defense was lack of intent. His defense was this is just a fantasy. Right. But I don't see you raising that in front of the judge, saying we need to impeach – we need to get this in because his defense is going to be X, and therefore we're going to use affirmative impeachment. Did you ever say that? I don't believe I used those exact words, but I did use the words that – I did tell the judge in the record that he's claiming that he didn't have the intent. I did not use the words affirmative defense. But I just want to make sure what your theory is. It's always been intent in 404, right? That's correct. We did – well, we did initially argue inextricably intertwined as well. But yes, 404B and – What do you mean, initially? You argued on appeal, too. That's correct. That's correct. But in this case, the trial judge properly exercised his discretion, and he went through – he was aware of Shainanovitz. He was aware of Allen. He was aware of these cases. He didn't survive to ignore them. Well, possibly. He said, well, it was just second law. Possibly. But he did not ignore them. He did not ignore them. He believed that this case was distinguishable from Shainanovitz as it is. In Shainanovitz, specific intent was not an issue. Literature, it was – What – sorry. What generally happens with non-sexual literature to prove intent? Copies of environmental literature to show an intent to engage in tree spiking, copies of revolutionary literature of one sort or another to prove some sort of conspiracy. What have the courts been doing in that? Well, there are cases in a few different circuits where people had – the defendants had a book called the Anarchist Cookbook, and it showed – part of what it showed was how to make the bomb, basically a recipe to make the bomb. The Fifth Circuit allowed it to show intent. I believe the Sixth Circuit as well. Do what? To show intent when the defendant in that case – that was United States v. Walters. I will submit that case in a 28-J letter. In that case, the defendant was accused of giving a – putting a bomb in a package in order to blow up the office in a woman that he had a grudge against. And it was entered to show his intent to make this bomb and to – and that case actually was much less compelling. It wasn't a threat case? I could see it sort of in a threat case, but in a case like that, where if he said, I didn't make the bomb, how does that go to court? Well, he said he didn't have the intent to commit this crime, basically. And – He made a bomb, but he didn't have intent to make a bomb? Well, yes, basically. I do have the case, and I will submit it. It doesn't approve knowledge. It knows if you have the Anarchist Cookbook and it shows you how to make a bomb, then claiming I didn't know how to do it is defeated by showing, yes, look, here you have it. It's like cooking a souffle. You know, if you have Julia Child and you say, I didn't know how to cook a souffle, you say, well, the only souffle is Julia Child. It tells you exactly how to do it. Well, that's correct. A good job she does, too. Well, that's correct. That's correct. And in United States v. Pullman, this court found that the – because no literature or e-mails or any type of thing showing that the defendant had a prior intent to engage in sex with children was admitted, that it was improperly – Well, that was the case where the government kept telling him, please have sex with my daughter. You know, he kept saying, I don't want to do it, and the government, they just kept saying, oh, you really got to do it, you know. That was an entrapment case, absolutely. Yes, I remember it well. Yes, I know. But that case said that this type of literature should be admitted to show intent. The sister circuits agree with that, and the trial judge properly exercised his discretion. And since I'm out of time, unless there are any further questions, I will sit down. Thank you. Before you get started too much into your rebuttal, I'd like to ask you a question. Yes, sir. We're sitting as an in-bank court here, and we have power to overrule panel court decisions. Suppose, for the sake of argument, that this in-bank court overrules the alternative holdings in Somanovich, how would you respond to the intent argument that's outlined by Judge Trott and his dissent in this case? I'm not clear on what you're asking, Your Honor. Our discussion so far has largely gone on the alternative holding. Suppose we decide that alternative holding is not going to be the law of the Ninth Circuit. So all we have left is the intent argument. It was outlined by Judge Trott in his dissent. My question is, do you have a response? Can you show where he was wrong on his intent analysis? Well, the arguments were made the same as to specific intent and general intent in terms of Somanovich. What the Court was talking about then was the subjective intent. And they had to look at what, in fact, Mr. Curtin was doing in terms of dispelling his defense. And I would submit to you that because it wasn't offered for impeachment, that it wasn't relevant. It still wasn't relevant. My understanding of what Judge Trott was arguing was that they had to counter what Kevin Curtin put forward as his defense, and it became an issue of subjective intent. I would submit that the elements of the crime are, once again, are not specific intent, but it was a general intent-type crime. And I don't think there's any distinction if you then go back and try and say, well, he brought up this issue in terms of his defense. General intent-type crime when the whole crime turns on his purpose and he's traveling to escape. I'm sorry? How could it be a general intent-type crime when the whole crime turns on his purpose when he's traveling to escape? Well, because of the fact that we were looking at what was objective in terms of the crime. Once he comes and crosses the State lines, the argument was. He had a very specific purpose, or else he hasn't committed a crime. Right. Is your argument that this is not a specific intent crime? No. The argument was dealing with the distinction being that it was a subjective intent. He had to look to his subjective intent. Our argument was that there were different tests that were objective in nature. He didn't go up to talk to the decoy, and that was an objective test. And that was what our argument was in terms of looking at what he had done. Well, suppose this was introduced for impeachment. Does that alter the need to do a prejudice probative value balance under 403? No. And I think ultimately the Court said in the opinion that it's a 401 issue on relevancy. Even if it's an impeachment. Right. And so you still have to go through that analysis to whether it's more prejudicial or probative. And I think clearly the district court found that it was very, very prejudiced. And they couldn't actually even get through these. They went ahead and based upon the representation of the United States attorney and followed what they said would be proper in admitting these five different stories and then trying to pull out snippets from the stories. Excuse me, Mr. Can I just ask a procedural question? Yes, ma'am. Was all of this argued before the court in Lemonet before trial or not? Part of it was argued in Lemonet and then parts of it were argued during the time of trial. It changed at different periods as to whether the entire 140 stories were going to come in. And then there was a part where highlighted portions were going to come in. And then ultimately it was the five stories that went into evidence. But the original motion was to keep all of them out. Yes, ma'am. I would just point out. Let me just ask counsel. Counsel, the government knew what your defense was to be right. Well, they were anticipating it based upon the statement that had been made by our client. Yes, sir. And your briefs. And your briefs. Yes. But you could have sat down at the end of the government's case. That's correct. There was no you had no obligation to go forward. Other than the fact that all this came in during the case in chief and that ultimately we had filed the motions, but they made the decisions in the case in chief. It wasn't whether they were anticipating the defense or not. All this came in in terms of the case in chief. I just need to clarify one thing. I know it's late, but it's so hard to get a question in in this group of 15. There's two counts here. All right. And the first count is the one that requires specific intent. Yes, ma'am. And the second count, does that also require specific intent? Or is that more of an objective intent that's evidenced by his using the e-mails to sending them to persuade her to show up in Las Vegas? No. I think the instruction both dealt with specific intent. And the distinction and the difference, I guess, that was made is that it got turned into what is subjective intent and then what is objective intent in terms of looking at, making a determination of whether he had the specific intent. And that's where I think it was incorrect in the analysis, looking at what he was doing. Okay. The time has expired. Well, all intent is objective. The case just argued, the time has expired by quite a bit. The case just argued is submitted for decision. That concludes the Court's calendar for this afternoon. And the Court stands adjourned.
judges: Schroeder, Wallace, Pregerson, Kozinski, Trott, Rymer, Kleinfeld, Thomas, Silverman, Graber, McKeown, Wardlaw, Berzon, Bybee, Callahan